# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DEBORAH AL, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-1537 |
| Plaintiff, | **CLASS ACTON COMPLAINT** |
| v. | |
| ACCOUNT CONTROL TECHNOLOGIES, INC., | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, Chapters 421-427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Deborah Al is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA in that she engaged in a consumer credit transaction, namely an education loan (the "student loan"), for personal, family or household purposes. Wis. Stat. § 421.301(17).

6. Defendant Account Control Technologies, Inc. ("ACT") is a foreign corporation with its principal place of business located at 5300 Kings Island Drive, Mason, Ohio 45040.

7. ACT is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

8. ACT is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. ACT is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. ACT is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

11. At some point prior to December 19, 2017, Plaintiff entered into one or more consumer credit transactions with the United States Department of Education ("DoE") for one or more student loans. Upon information and belief, the student loan was entered pursuant to the "Federal Stafford Loan" program. *See* 20 U.S.C. § 1071(c).

12. Federal student loan agreements are "consumer credit transactions" pursuant to the WCA. Wis. Stat. §§ 421-427; *see also Patzka v. Viterbo Coll.,* 917 F. Supp. 654, 659 (W.D. Wis. 1996).

13. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the

customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

14. Plaintiff's student loan contracts were for "services," namely educational services.

15. Plaintiff's student loans, as are all student loans, are extensions of "credit." Plaintiff obtained student loans to pay for tuition, fees, and educational materials. Wis. Stat. § 421.301(14) ("'Credit' means the right granted by a creditor to a customer to defer payment of debt, to incur debt and defer its payment or to purchase goods, services or interests in land on a time price basis.").

16. That the lender placed the loan for collection with ACT, and that ACT sent Plaintiff debt collection letters establishes that the lender intended repayment of the debt.

17. Pursuant to the loan agreement, the loan was payable in installments. Under a standard student loan contract, the consumer incurs an obligation to pay the balance in monthly installments, over the contract's term, and payments usually begin after the consumer has graduated or otherwise left school.

18. Moreover, the student loan agreement provides for the accrual of interest, which is a "finance charge." Wis. Stat. § 427.301(20)(a) ("Finance charge" includes "Interest, time price differential and any amount payable under a discount or other system of additional charges").

19. The third-party collection of federal student loans, including Federal Stafford Loans, is subject to the FDCPA. See, Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1035 n.2 (9th Cir. 2009).

3

20. On or about September 23, 2019, ACT mailed a debt collection letter to Plaintiff regarding an alleged student loan debt. A copy of this letter is attached to this complaint as Exhibit A.

21. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22. Exhibit A is the first written communication that Defendant mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

23. Exhibit A includes the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors to provide along with their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

24. Exhibit A fails to indicate the creditor to whom Plaintiffs alleged debt in any express terms.

25. Instead, Exhibit A merely identifies a "Client" as "ASCENDIUM," and further states: "This letter is to notify you ASCENDIUM has referred your account to [ACT] for collection of your defaulted student loan debt."

26. Upon information and belief, "ASCENDIUM" refers to Ascendium Education Group, Inc. ("Ascendium"), a domestic corporation with its principal place office located at 2501 International Lane, Madison, Wisconsin 53704.

27. Upon information and belief, Ascendium is not actually the creditor of Plainitiff's alleged student loan debt. Rather, the creditor of Plaintiff's alleged student loan debt is DoED, while Ascendium acts merely as the servicer of the account.

4

28. Furthermore, even if Ascendium were the creditor of Plaintiff's alleged debt, the unsophisticated consumer would not recognize that a "Client" listed as "ASCENDIUM" corresponded to the creditor of their alleged student loan debt.

29. Upon information and belief, Ascendium was formerly known as "Great Lakes Educational Loan Services, Inc." ("Great Lakes"), and any loan agreement entered into by Plaintiff, along with many of the consumers who would have received similar communications from ACT, would have with Great Lakes and not Ascendium.

30. Moreover, the header in Exhibit A includes the following representations:

| PRINCIPAL | INTEREST | OTHER FEES |
|---|---|---|
| $35,274.94 | $661.08 | $0.00 |
| COLLECTION FEE | AMOUNT RECEIVED | TOTAL DUE |
| $4,444.93 | $0.00 | $40,380.95 |

31. The body of Exhibit A further states: "At this time, ASCENDIUM has indicated your entire balance as indicated above is due and payable."

32. Exhibit A thus represents that, at the time Exhibit A was mailed, Plaintiff's Federal Stafford loan was in default, and that DoED and/or Ascendium had accelerated the balance.

33. Exhibit A further states:

SEE THE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION.

34. The reverse side of Exhibit A states:

The amount stated on the reverse side is the amount you owe as of the date of this letter. If your contract with your creditor requires the accrual of interest, late charges, penalties or other adjustments, which may be assessed on a daily basis, we will adjust your balance accordingly as may be requested by your creditor. If this is the case, and you pay the amount stated on the reverse side of this letter, an adjustment may be necessary after we receive your payment.

If, on the other hand, your contract or your creditor does not require the assessment of interest, late charges, penalties or other amounts, the balance stated on the reverse side will be unchanged. We encourage you to review your agreement to determine if interest, late charges, penalties or other amounts may be assessed. You may contact ACT to obtain an updated balance statement.

5

35. The Department of Education has promulgated a comprehensive set of regulations to implement and enforce the Federal Family Education Loan Program, which includes the Federal Stafford Loan Program.

36. The DOE's regulations govern, among other things, the charges that lenders may impose on borrowers. *See* 34 C.F.R. § 682.202.

37. 34 C.F.R. § 682.202(e) governs the imposition of late fees in the case of Federal Stafford Loans:

> (1) If authorized by the borrower's promissory note, the lender may require the borrower to pay a late charge under the circumstances described in paragraph (e)(2) of this section. This charge may not exceed six cents for each dollar of each late installment.
>
> (2) The lender may require the borrower to pay a late charge if the borrower fails to pay all or a portion of a required installment payment within 15 days after it is due.

38. The governing regulations authorize the imposition of a late charge in the event that the borrower fails to pay all or part of an *installment* within 15 days after payment is due.

39. Nothing in the governing regulations authorizes the imposition of a late charge after the debt has been accelerated.

40. The false representation that a debt may incur late charges when there is no authorization for such late charges is materially false and misleading to the unsophisticated consumer and violates the FDCPA. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 368 (7th Cir. 2018); *see also, e.g., Hovermale v. Immediate Credit Recovery, Inc.*, No. 15-cv-5646, 2016 U.S. Dist. LEXIS 102206, at *8 (D.N.J. Aug. 4, 2016) ("The Court agrees with Plaintiff that, because Plaintiff was in default on a Federal Perkins Loan, Defendant did not have the lawful right to add late charges at the time it sent the Letter to Plaintiff.") (citing 34 C.F.R. §

674.31(b)(5)(i); 34 C.F.R. § 674.43(b)(2)); *see also Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (collecting cases holding that "post-acceleration late fees are unlawful.").

41. As explained in *Hovermale*, 2016 U.S. Dist. LEXIS 102206, at *8, the authority governing late fees for Federal Perkins Loans is very similar to the authority governing late fees for Federal Stafford Loans. 34 C.F.R. § 674.43(b)(2):

> (2)
> Subject to § 674.47(a), the institution may assess a late charge for loans made for periods of enrollment beginning on or after January 1, 1986, during the period in which the institution takes any steps described in this section to secure –
>
> (i) Any part of an **installment** payment not made when due, or
>
> (ii) A request for deferment, cancellation, or postponement of repayment on the loan that contains sufficient information to enable the institution to determine whether the borrower is entitled to the relief requested.

34 C.F.R. § 674.43(b)(2) (emphasis added).

42. As in *Hovermale*, when a loan is accelerated, the entire balance becomes "due and payable," *see* Exhibit A, and there is no "installment payment" that can become due.

43. Once Plaintiff's Federal Stafford Loan became accelerated, there was no installment payment that could be subject to a late fee pursuant to 34 C.F.R. § 682.202(e).

44. By itemizing "OTHER COSTS" and stating that Plaintiff's account may be subject to late fees, Exhibit A includes representations which are false, deceptive, and misleading, as to the amount, character, and legal status of Plaintiff's alleged debt.

45. Furthermore, on or around September 25, 2019, the U.S. Department of the Treasury sent Plaintiff a notice indicating that her Social Security Benefits had been garnished in an amount of $193.35 and such funds were applied to her student loan debts owed to DoED and serviced by Ascendium. A copy of such notice is attached to this Complaint as Exhibit B.

46. Upon information and belief, the garnishment described by Exhibit B was not the first incident of Plaintiff's Social Security Benefits being garnished to be applied to her DoED debt – such garnishments were initiated in July or August of 2019.

47. Despite having had her Social Security Benefits being garnished to be applied to her DoED debt, Exhibit A itemizes an "AMOUNT RECEIVED" as $0.00.

48. By itemizing an "AMOUNT RECEIVED" as $0.00 after Plaintiff's social security benefits had already been garnished by DoED, Exhibit A includes representations which are false, deceptive, and misleading as to the amount, character, and legal status of Plaintiff's alleged debt.

49. Finally, at several points prior to November 22, 2019, the date of the expiration of the 30-day validation period described in Exhibit A, ACT contacted several third parties via telephone in connection with the collection of Plaintiff's alleged debt.

50. Among such individuals were several of Plaintiff's co-workers, whose contact information ACT, upon information and belief, obtained via her employer's website.

51. ACT contacted Plaintiff's co-workers directly rather than call the general phone number of Plaintiff's employer, which was also available on her employer's website.

52. Additionally, ACT contacted Plaintiff's ex-husband in connection with the collection of her alleged debt.

53. Plaintiff never provided ACT, Ascension, DoED, or Great Lakes, with any such third party's contact information and never consented for such third parties to be contacted in connection with the collection of her alleged debt.

8

54. 15 U.S.C. § 1692c(b) provides:

**Communication with third parties**
Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

55. Notably, 15 U.S.C. § 1692b provides for communication with third parties for the purpose of acquiring "location information," as defined by § 1692s(7) as "a consumer's place of abode and his telephone number at such place, or his place of employment."

56. ACT's had no need to obtain "location information," as ACT already had a record of Plaintiff's home address, telephone number, and place of employment, and ACT had no reason to believe such records were inaccurate.

57. Upon information and belief, ACT's communications with third parties in connection with the collection of Plaintiff's alleged debt were actually made for the purpose of harassing Plaintiff. Any argument that ACT was seeking location information is purely pretextual, as ACT already had Plaintiff's location information.

58. Additionally, ACT's communications with third parties in connection with the collection of Plaintiff's alleged debt served to overshadow the 30-day validation period as provided by Exhibit A.

59. Plaintiff suffered emotional distress as a result of such communications with her co-workers and ex-husband, and Plaintiff was confused and misled by Exhibit A.

*The FDCPA*

60. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*,

9

2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v.*

10

*Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

62. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016)

(holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

63. 15 U.S.C. § 1692d generally prohibits "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

64. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

65. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

66. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

67. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

68. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

69. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

70. 15 U.S.C. § 1692g(a) states in relevant part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing—
> …

(2) the name of the creditor to whom the debt is owed;

71. 15 U.S.C. § 1692g(b) states, in part: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

### *The WCA*

72. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

73. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

74. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

75. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

76. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

77. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

78. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

79. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

80. Wis. Stat. § 427.104(1)(d) states that a debt collector may not: "Initiate or threaten to initiate communication with the customer's employer prior to obtaining final judgment against the customer, except as permitted by statute including specifically s. 422.404, but this paragraph does not prohibit a debt collector from communicating with the customer's employer solely to

verify employment status or earnings or where an employer has an established debt counseling service or procedure."

81. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

82. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

83. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

84. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

85. The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.")

## COUNT I – FDCPA

86. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

87. Exhibit A fails to name the creditor to whom Plaintiff's alleged debt is owed.

88. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(2).

15

Case 2:19-cv-01537-LA    Filed 10/18/19    Page 15 of 19    Document 1

## COUNT II - FDCPA

89. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. By itemizing "OTHER COSTS" and stating that Plaintiff's account may be subject to late fees, Exhibit A includes representations which are false, deceptive, and misleading as to the amount, character, and legal status of Plaintiff's alleged debt.

91. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT III – WCA

92. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

93. By itemizing "OTHER COSTS" and stating that Plaintiff's account may be subject to late fees, Exhibit A includes representations which are false, deceptive, and misleading, as to the amount, character, and legal status of Plaintiff's alleged debt.

94. Defendant is licensed as a collection agency by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

95. Exhibit A likewise violates the FDCPA.

96. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT IV – FDCPA

97. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

98. By itemizing an "AMOUNT RECEIVED" as $0.00 after Plaintiff's social security benefits had already been garnished by DoED, <u>Exhibit A</u> includes representations which are false, deceptive, and misleading as to the amount, character, and legal status of Plaintiff's alleged debt.

99. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

## **COUNT V – FDCPA**

100. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

101. By communicating with third parties in connection with the collection of Plaintiff's alleged debt prior to the expiration of the 30-day period following ACT's initial written communication, ACT engaged in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff and overshadowed the validation notice.

102. Defendant violated 15 U.S.C. §§ 1692c(b), 1692d, 1692f, and 1692g(b).

## **COUNT VI – WCA**

103. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

104. By communicating with third parties in connection with the collection of Plaintiff's alleged debt prior to the expiration of the 30-day period following ACT's initial written communication, ACT engaged in conduct in such a manner as can reasonably be expected to threaten or harass Plaintiff.

105. <u>Exhibit A</u> likewise violates the FDCPA.

106. Defendant violated Wis. Stat. §§ 427.104(1)(d), 427.104(1)(g), and 427.104(1)(h).

## CLASS ALLEGATIONS

107. Plaintiff brings this action on behalf of two Classes.

108. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by ACT in the form of Exhibit A to the complaint; (c) listing a "Client" as "ASCENSION," (d) between October 18, 2018 and October 18, 2019, inclusive, (e) not returned by the postal service.

109. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were identified as the holder of an account held by Ascension and assigned to ACT for collection, (c) where ACT contacted third parties in connection with the collection of such debt prior to the expiration of the 30-day period following ACT's initial written communication sent to the person identified as the account holder, (d) between October 18, 2018 and October 18, 2019, inclusive.

110. Each Class is so numerous that joinder is impracticable.

111. Upon information and belief, there are more than 50 members of each Class.

112. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA and/or the WCA.

113. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

114. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

115. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

116. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) Injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: October 18, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com